UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHAWN T. BRADLEY,

                              Plaintiff,

v.                                                              1:07-CV-0148
                                                                (GTS/RFT)
B. RELL, Police Officer;
J. MAISENHELDER, Police Officer;
H. WOLTMAN, Police Officer;
W. HADSEL, Police Officer;
E. FEENEY, Police Officer;
JOHN DOE VI, Desk Officer;
GERALD KELLER, Chief of Police,
City of Kingston Police Department;

                              Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

SHAWN T. BRADLEY
  Plaintiff, *Pro Se*
2712 Young Avenue
Bronx, NY 10469

COOK, NETTER, CLOONAN,                          ROBERT D. COOK, ESQ.
KURTZ, & MURPHY, P.C.
  Counsel for Defendants
PO Box 3939
85 Main Street
Kingston, NY 12402

HON. GLENN T. SUDDABY, United States District Court Judge

## DECISION and ORDER

Currently before the Court in this *pro se* civil rights action filed by Shawn Bradley

("Plaintiff") is a motion for summary judgment filed by B. Rell, Gerald Keller, J. Maisenhelder,

H. Woltman, W. Hadsel, E. Feeney, and John Doe VI ("Defendants").  (Dkt. No. 59.)  For the

reasons set forth below, Defendants' motion is granted in part and denied in part.

## I.     BACKGROUND

### A.     Plaintiff's Claims

On February 8, 2007, Plaintiff filed his original Complaint in this action.  (Dkt. No. 1.)
On October 9, 2007, he filed an Amended Complaint.  (Dkt. No. 24.)  On July 22, 2008, he filed
a Second Amended Complaint.  (Dkt. No. 54.)

Generally, liberally construed, Plaintiff's Second Amended Complaint alleges that, on
September 2, 2006, Defendants violated Plaintiff's rights under the Fourth and Eighth
Amendments to the United States Constitution by subjecting him to excessive force and denying
him adequate medical treatment.  (*See generally id*.)  More specifically, Plaintiff alleges that, on
September 2, 2006, after being stopped by police officers for the City of Kingston for operating a
motor vehicle with defective brake/tail lights, and after fleeing the scene to avoid arrest, Plaintiff
was apprehended and assaulted by Defendants Rell, Nielson, Hadsel, Woltman, Lowe, Herrling,
Feeney and a police dog, and was subsequently denied medical treatment for the injuries that he
sustained for approximately four hours.  (*Id*.)  Familiarity with the other factual allegations
supporting Plaintiff's Fourth and Eighth Amendment claims in his Second Amended Complaint
is assumed in this Decision and Order, which is intended primarily for review by the parties.
(*Id*.)

### B.     Undisputed Material Facts

The following material facts are undisputed by the parties.  (*Compare* Dkt. No. 59,
Attach. 1 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 73, Attach. 1 [Plf.'s Rule 7.1 Response].)

On September 2, 2006, during the late evening hours, Plaintiff was operating a motor

vehicle with defective tail/brake lights and was stopped by the Kingston Police for that traffic

violation.  While acting within the scope of his employment with the City of Kingston Police

Department, Officer B. Rell was one of the officers involved in the stop of Plaintiff's vehicle.

Shortly after being pulled over, Plaintiff fled the scene in an effort to avoid being arrested for

violating his parole.

       Plaintiff was subsequently apprehended by officers of the Kingston Police Department,

including Officer Rell and a K-9 police dog named "Oden."  At least one of the officers put

Plaintiff on the ground, put a foot on his head, grabbed his legs, and placed handcuffs on him.

After being restrained, Plaintiff was found to be in possession of illegal narcotics.  Plaintiff was

then transported to the Kingston Police Department, where he was booked.  Between three and

five hours after he arrived at the police station, he was transported to the Benedictine Hospital

for medical treatment.

       At the hospital, Plaintiff was examined and found to have a scalp contusion and puncture

wounds on his right ankle from a K-9 bite.  Plaintiff's wounds were cleaned, and antibiotic was

applied.  Thereafter, he was given pain medication and released from the hospital.

       Familiarity with the remaining undisputed material facts of this action, as well as the

disputed material facts, as set forth in the parties' Rule 7.1 Statement and Rule 7.1 Response, is

assumed in this Decision and Order, which (again) is intended primarily for review by the

parties.  (*Id*.)

     **C.**    **Defendants' Motion for Summary Judgment**

       Generally, in support of their motion for summary judgment, Defendants argue as

follows: (1) the force that was used against Plaintiff was not excessive, but was reasonable under

the circumstances; (2) the arresting officers are entitled to qualified immunity; (3) Plaintiff's medical needs were not serious, and, even if they were serious, Defendants were not deliberately indifferent to those needs; (4) Plaintiff's claims against Defendant Keller must be dismissed because Plaintiff has failed to demonstrate personal involvement; and (5) Plaintiff's claims against Defendants Woltman, Hadsel and Feeney, asserted for the first time in his Second Amended Complaint, are barred by the statute of limitations.  (*See generally* Dkt. No. 59, Attach. 2 [Defs.' Memo. of Law].)

In Plaintiff's response to Defendants' motion for summary judgment, he argues as follows: (1) the use of force against him was not reasonable under the circumstances, but was excessive; (2) Defendants are not entitled to qualified immunity; (3) the delay in time between when Plaintiff was brought to the police station and when Plaintiff was brought to the hospital evidences Defendants' deliberate indifference to his serious medical needs; (4) the claims against Defendant Keller should not be dismissed because Defendant Keller failed to properly train his police officers, as evidenced by the use of excessive force against Plaintiff; and (5) the claims against Defendants Woltman, Hadsel and Feeney are not barred by the statute of limitations. (*See generally* Dkt. No. 73 [Plf.'s Response Memo. of Law].)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of

4

material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the moving party has met this initial responsibility, the nonmoving party must come forward with "specific facts showing a genuine issue [of material fact] for trial."  Fed. R. Civ. P. 56(e)(2).

As for the *materiality* requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248 [citation omitted].

As for the *genuineness* requirement, a dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party."  *Id.*  As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a *genuine* issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted; emphasis added]; *see also* Fed. R. Civ. P. 56(e)(2).[1]  Similarly, inadmissible hearsay is insufficient to create a *genuine* issue of fact, "absent a showing that admissible evidence will be available at trial."  *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) [citations omitted].  Moreover, "an affidavit . . . that, by omission or addition, contradicts the affiant's previous deposition testimony" is insufficient to create a *genuine* issue

---

[1]     As the Supreme Court has explained, "[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986) [citations omitted].

of fact.  *Hayes v. New York City Dept. of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) [citations omitted].

Finally, as this Court has previously observed, "[i]t is well established that issues of credibility are *almost never* to be resolved by a court on a motion for summary judgment." *Cruz v. Church*, 05-CV-1067, 2008 WL 4891165, at *4 & n.6 (N.D.N.Y. Nov. 10, 2008) (Suddaby, J.) [emphasis in original; collecting cases].  However, "there is a *narrow exception* to this well-established rule." *Cruz*, 2008 WL 4891165, at *4 [citation omitted].  In *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005), the Second Circuit explained that this narrow exception is for testimony by a non-movant that possesses the following two characteristics: (1) it constitutes almost the exclusive basis for a disputed issue of fact in the case (or, expressed differently, it is largely unsubstantiated by any other direct evidence); and (2) it is so lacking in credibility (because the testimony is incomplete and/or replete with inconsistencies and improbabilities) that, even after drawing all inferences in the light most favorable to the non-movant, no reasonable jury could find for the non-movant.  *Cruz*, 2008 WL 4891165, at *4 & n.7 [collecting cases].  "Again, it must be remembered that the circumstances giving rise to this exception are rare.'" *Id*. & n.7 [collecting cases].

B.     **Legal Standard Governing Motions to Dismiss for Failure to State a Claim**

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnise Gen. Transatlantique*,

405 F.2d 270, 273-74 (2d Cir. 1968) [citations omitted]; *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties.").  Moreover, even where a defendant has not advanced such a failure-to-state-a-claim argument on a motion for summary judgment, a district court may, *sua sponte*, address whether a *pro se* prisoner has failed to state a claim upon which relief may be granted.[2]  For these reasons, it is appropriate to recite the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

It has long been understood that a dismissal for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), may be based on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga County*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review) [citations omitted].

With regard to the first ground, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  By requiring this "showing," Fed. R. Civ. P. 8(a)(2) requires that

---

[2]      The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . . is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . . seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall . . . dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ."

the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what

the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212,

n.17 [citations omitted].  The main purpose of this rule is to "facilitate a proper decision on the

merits."  *Id*. at 212, n.18 [citations omitted].[3]

The Supreme Court has long characterized this pleading requirement under Fed. R. Civ.

P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established

pleading requirements that exceed this liberal requirement.  *Id*. at 212, n.20 [citations omitted].

However, even this liberal notice pleading standard "has its limits."  *Id*. at 212, n.21 [citations

omitted].  As a result, numerous Supreme Court and Second Circuit decisions exist holding that a

pleading has failed to meet this liberal notice pleading standard.  *Id*. at 213, n.22 [citations

omitted]; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an

appellate decision holding that a complaint had stated an actionable antitrust claim under 15

U.S.C. § 1.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  In doing so, the Court

"retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957),

that "a complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief."  *Twombly*, 127 S. Ct. at 1968-69.  Rather than turning on the *conceivability* of an

---

[3]         *See also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that
which will enable the adverse party to answer and prepare for trial, allow the application of res
judicata, and identify the nature of the case so it may be assigned the proper form of trial.")
[citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle
function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim
asserted so as to enable him to answer and prepare for trial.") [citations omitted].

actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965 [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*. [citations omitted].[4]

As have other Circuits, the Second Circuit has recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, including claims brought by *pro se* litigants (although the plausibility of those claims is to be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[5] It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197,

_____

[4]        *See also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[The Supreme Court] is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.").

[5]        *See, e.g., Jacobs v. Mostow*, 271 F. App'x 85, 87 (2d Cir. March 27, 2008) (in *pro se* action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Rule 32.1[c][1] of the Local Rules of the Second Circuit); *Boykin v. KeyCorp.*, 521 F.3d 202, 215-16 (2d Cir. 2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

2200 (2007) [citation omitted; emphasis added].  That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim.  *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added].  That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever.  Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.[6]

Finally, in reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor.

### C.    Legal Standard Governing Plaintiff's Excessive Force Claim

Plaintiff bases his federal claims on 42 U.S.C. § 1983, which reads, in part as follows:

---

[6]    For example, in *Erickson*, the Supreme Court held that, because the plaintiff-prisoner had alleged that, during the relevant time period, he suffered from hepatis C, he had alleged facts plausibly suggesting that he possessed a sufficiently serious medical need for purposes of an Eighth Amendment claim of inadequate medical care.  *Erickson*, 127 S. Ct. at 2199-2200.  Expressed differently, the Court held that such a plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication (a requirement that had been imposed by the district court).  This point of law is hardly a novel one, which is presumably why the *Erickson* decision was relatively brief.  Prior to the Supreme Court's decision, numerous decisions, from district courts within the Second Circuit alone, had found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment.  *See, e.g., Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).  The important thing is that, in *Erickson*, even the *pro se* plaintiff was required to allege some sort of fact.

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State . . ., subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action.

42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred."  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 [1979]).

Here, Plaintiff claims, *inter alia*, that Defendants violated his constitutional rights because they used excessive force in executing his arrest.  "Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person."  *Graham*, 490 U.S. at 394.  Thus, "all claims that law enforcement officers have used excessive force–deadly or not–in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."  *Id.* (citation omitted) (noting that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims").

### D.    Legal Standard Governing Plaintiff's Inadequate Medical Treatment Claim

"Where a pre-trial detainee alleges deliberate indifference to a medical need while incarcerated, such a claim is evaluated under the Due Process Clause of the Fourteenth Amendment."  *Dzwonczyk v. Syracuse City Police Dept.*, 08-CV-0557, 2008 WL 5459147, at

*13 (N.D.N.Y. Dec. 22, 2008) (McCurn, J.) (citing *Arac v. Bodek*, 213 F.3d 625 [2d Cir. 2000])
(other citation omitted).  "While the exact standard to be applied to such a claim has not been
made clear, what is known is that the pre-trial detainee's rights are at least as great as those
provided to a convicted prisoner under the Eighth Amendment, and that something more than
negligence on the part of the defendant is required." *Dzwonczyk*, 2008 WL 5459147, at *13
(citations omitted).  "Consequently, courts tend to apply the Eighth Amendment standard when
deciding a pre-trial detainee's claim for deliberate indifference to a medical need under the
Fourteenth Amendment." *Id*. (collecting cases).  As a result, in order to establish a claim for
deliberate indifference to a serious medical need, a pre-trial detainee plaintiff must allege as
follows: "(1) a deprivation that is sufficiently serious, i.e., a deprivation that presents a condition
of urgency, one that may produce death, degeneration, or extreme pain, and (2) reckless
indifference, that is, defendants were aware of plaintiff's serious medical needs and consciously
disregarded a substantial risk of serious harm." *Id*. (internal quotation marks and citations
omitted).

###         E.        Legal Standard Governing Doctrine of Qualified Immunity

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless
defendant's alleged conduct, when committed, violated 'clearly established statutory or
constitutional rights of which a reasonable person would have known.'" *Williams v. Smith*, 781
F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 [1982]).  As a
result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1)
"whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional
violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was

unlawful in the situation confronted." *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004)

[citations omitted], *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007) [citations

omitted].

In determining the second issue (i.e., whether it would be clear to a reasonable officer

that his conduct was unlawful in the situation confronted), courts in this circuit consider three

factors:

> (1) whether the right in question was defined with 'reasonable
> specificity'; (2) whether the decisional law of the Supreme Court and
> the applicable circuit court support the existence of the right in
> question; and (3) whether under preexisting law a reasonable
> defendant official would have understood that his or her acts were
> unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) [citations omitted], *cert. denied*, 503 U.S.

962 (1992).[7]  "As the third part of the test provides, even where the law is 'clearly established'

and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity

defense also protects an official if it was 'objectively reasonable' for him at the time of the

challenged action to believe his acts were lawful." *Higazy v. Templeton*, 505 F.3d 161, 169-70

(2d Cir. 2007) [citations omitted].[8]  This "objective reasonableness" part of the test is met if

---

[7]      *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179
F.3d 57, 61 (2d Cir. 1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v.
Comptroller of City of New York*, 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d
470, 476 (2d Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v.
New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

[8]      *See also Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("[W]hether an official
protected by qualified immunity may be held personally liable for an allegedly unlawful official
action generally turns on the 'objective reasonableness of the action.'") [citation omitted]; *Davis
v. Scherer*, 468 U.S. 183, 190 (1984) ("Even defendants who violate [clearly established]
constitutional rights enjoy a qualified immunity that protects them from liability for damages
unless it is further demonstrated that their conduct was unreasonable under the applicable

13

"officers of reasonable competence could disagree on [the legality of defendant's actions]."

*Malley v. Briggs*, 475 U.S. 335, 341 (1986).[9]  As the Supreme Court has explained,

> [T]he qualified immunity defense . . . provides ample protection to all
> but the plainly incompetent or those who knowingly violate the law.
> . . . Defendants will not be immune if, on an objective basis, it is
> obvious that no reasonably competent officer would have concluded
> that a warrant should issue; but if officers of reasonable competence
> could disagree on this issue, immunity should be recognized.

*Malley*, 475 U.S. at 341.[10]

## III.   ANALYSIS

### A.   Plaintiff's Excessive Force Claim

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of

Plaintiff's excessive force claim because the force used was reasonable under the circumstances

and the arresting officers are entitled to qualified immunity.

### 1.   Whether Defendants Hadsel, Woltman, Feeney and Rell's Use of Force Was Reasonable Under Circumstances

"Determining whether the force used to effect a particular seizure is 'reasonable' under

the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on

the individual's Fourth Amendment interests against the countervailing governmental interests at

stake." *Graham*, 490 U.S. at 396 (internal quotation marks and citations omitted); *see also*

---

standard."); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects
defendants "even where the rights were clearly established, if it was objectively reasonable for
defendants to believe that their acts did not violate those rights").

[9]     *See also Malsh v. Correctional Officer Austin*, 901 F. Supp. 757, 764 (S.D.N.Y.
1995) [citing cases]; *Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y. 1996).

[10]     *See also Hunter v. Bryant,* 502 U.S. 224, 299 (1991) ("The qualified immunity
standard gives ample room for mistaken judgments by protecting all but the plainly incompetent
or those who knowingly violate the law.") [internal quotation marks and citation omitted].

*Phelps v. Szubinski*, 577 F. Supp.2d 650, 661 (E.D.N.Y. 2008).  Application of the 'reasonableness' standard in this context "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U .S. at 396; *see also Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Phelps*, 577 F. Supp.2d at 661 (quoting *Graham*, 490 U.S. at 396).

In considering the reasonableness of the force applied, as the Second Circuit explained

> The fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of some degree of force, but it does not give the officer license to use force without limit. The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer. It is clear, therefore, that there is no inherent conflict between a conviction for resisting arrest or harassment of a police officer and a finding that the police officers used excessive force in effectuating the arrest.

*Sullivan v. Gagnier*, 225 F.3d 161, 165-66 (2d Cir. 2000) (italics in original).

Stated another way, "[i]n order to determine whether the force used to effect an arrest was reasonable and, thus, not a violation of the Fourth Amendment, a 'factfinder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time.'"  *Spillman v. City of Yonkers*, 07-CV2164, 2010 WL 86139, at *7 (S.D.N.Y. Jan. 8, 2010 ) (quoting *Amnesty Am.*, 361 F.3d at 123).  "Inasmuch as the inquiry is fact-specific, 'granting summary judgment against a plaintiff on an

15

excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable.'" *Spillman*, 2010 WL 86139, at *7 (quoting *Amnesty Am.*, 361 F.3d at 123); *see also Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir. 2003) (noting that a plaintiff may prevail on an excessive-force claim "if he is able to show that [the officer] used more force than was necessary to subdue him").

The current record reveals the following undisputed facts. Plaintiff was in violation of his parole when he was pulled over on September 2, 2006. He fled the vehicle that he was driving on the night of September 2, 2006, to evade an arrest for a parole violation. He was chased on foot by at least one police officer and, while running, entered a pizza establishment. Plaintiff was eventually apprehended in front of the pizza establishment. After he exited the pizza establishment, he was brought to the ground, where an officer put a foot on his head.

In addition, when viewed in the light most favorable to the non-moving party, there is at least some admissible evidence in the record establishing the following five facts: (1) prior to exiting the pizza establishment, Plaintiff told the police officers standing outside of the pizza establishment, "It's okay. It's okay. I'm coming out" (Dkt. No. 40, Attach. 1, at 29); (2) Plaintiff exited the pizza establishment with his hands up, and stated to the police officers, "I give up" (Dkt. No. 40, Attach. 1, at 30); (3) Plaintiff was pushed on the ground by more than one officer and, while he was on the ground, one or more officers "stomped" on his head (Dkt. No. 40, Attach. 1, at 30; Dkt. No. 54, at ¶ 5; Dkt. No. 73, Attach. 2, at ¶ 6), and hit him more than once with a baton (Dkt. No. 40, Attach. 1, at 42.); (4) after Plaintiff was on the ground and handcuffed, he was bitten by a police dog (Dkt. No. 40, Attach. 1, at 29-30, 32, 41-43; Dkt. No. 54, at ¶¶ 5, 6); and (5) as a result of his exchange with law enforcement officials on the night of

September 2, 2006, Plaintiff suffered a headache and blurry vision, swelling and bruising around

his head, and an abrasion to his right lower leg from the dog bite (Dkt. No. 40, Attach. 1, at 37-

38; Dkt. No. 45, Attach. 2).

Based on this record, the Court finds that a rational jury could conclude that Defendants

Hadsel, Woltman, Feeney and Rell "used more force than was necessary to subdue him." *Curry*,

316 F.3d at 332.[11]   As a result, Defendants' motion with regard to this claim is denied on this

---

[11]       *See Shankle v. Andreone*, 06-CV-0487, 2009 WL 3111761, at *4 (E.D.N.Y. Sept. 25, 2009) (finding that "plaintiff has demonstrated, through sworn deposition testimony and medical records, issues of material fact as to the reasonableness of the force used by defendants" where plaintiff, among other things, "testified, at his deposition, that he was hit on the head after he had been handcuffed"); *Hamilton v. City of New York*, 07-CV-3633, 2009 WL 2226105, at *9 (E.D.N.Y. July 23, 2009) ("[W]here a plaintiff is in handcuffs and fully cooperating with police officers, even a single 'push or shove' may be deemed unreasonable.  Plaintiff testified that he was in handcuffs and not resisting arrest at the time Sergeant Byrnes tripped him.  There would be, therefore, no excuse for using any force on plaintiff as he was neither provoking Sergeant Byrnes nor threatening him in any way.  A reasonable juror could find that it was objectively unreasonable for Sergeant Byrnes to have purposely tripped plaintiff when there was no apparent reason to do so."); *Kavazanjian v. Rice*, 03-CV-1923, 2008 WL 5340988, at *4 (E.D.N.Y. Dec. 22, 2008) (denying defendants' motion for summary judgment where question of fact remained regarding whether canine was released on plaintiff, causing him to suffer injuries, after he was already handcuffed and immobilized); *Espada v. Schneider*, 522 F. Supp.2d 544, 555-56 (S.D.N.Y. 2007) (denying defendant's motion for summary judgment where question of fact existed regarding whether defendant struck plaintiff after he was handcuffed, noting that "[r]egardless of the limited extent of the injuries plaintiff suffered, and recognizing that compensatory damages cannot be awarded unless plaintiff's injuries were proximately caused by the constitutional violation, there is no objective justification for [striking an arrestee after he is handcuffed and subdued]"); *Davis v. City of New York*, 04-CV-3299, 2007 WL 755190, at *12 (E.D.N.Y. Feb. 15, 2007) (denying defendants' motion for summary judgment on plaintiff's excessive force claim where he testified that officer kicked her in shoulder, without any provocation or resistence on her part, while she was lying on floor in handcuffs); *Pierre-Antoine v. City of New York*, 04-CV-6987, 2006 WL 1292076, at *4 (S.D.N.Y. May 9, 2006) (noting that it is harder to maintain that force was necessary where such force was used while plaintiff was in handcuffs); *Graham v. Springer*, 03-CV-6190, 2005 WL 775901, at *6 (W.D.N.Y. Apr. 5, 2005) (denying summary judgment on plaintiff's excessive force claim where plaintiff's evidence indicated that he was kicked while lying on ground in handcuffs); *Chew v. Gates*, 27 F.3d 1432, 1441-42 (9th Cir. 1994) (denying defendants' motion for summary judgment on excessive force claim where K-9 was used to apprehend plaintiff, because [1] K-9 was trained to bite and maul

ground.

### 2.   Whether Defendants Are Entitled to Qualified Immunity

Based on the current record, the Court rejects Defendants' qualified immunity argument. The Court finds that is beyond question that the right to be free from excessive force was clearly established at the time of Plaintiff's arrest.  Furthermore, the Court finds that a reasonable officer would have known that continuing to assault a handcuffed and subdued arrestee, and/or "releasing a police dog on a handcuffed, immobilized arrestee violated that right." *Kavazanjian*, 2008 WL 5340988, at *4 (citing *Mendoza v. Block*, 27 F.3d 1357, 1362 [9th Cir. 1994]).

For these reasons, Plaintiff's excessive force claim against Defendants Hadsel, Woltman, Feeney and Rell survives Defendants' motion for summary judgment.

### B.   Plaintiff's Inadequate Medical Treatment Claim

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of Plaintiff's inadequate medical care claim because Plaintiff has failed to introduce evidence establishing that his injuries constitute a serious medical need, and, even assuming that his injuries constitute a serious medical need, Plaintiff has failed to introduce evidence establishing Defendants' deliberate indifference to that medical need.

### 1.   Whether Plaintiff's Injuries Constituted Serious Medical Need

"A serious medical condition must be 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Osacio v. Greene*, 08-CV-0018, 2009 WL 3698382, at

---

until countermanding order was given, and here was released by police to apprehend *concealed* suspect, leaving dog out of sight and therefore beyond reach of a countermanding order, [2] record "did not reveal an articulable basis for believing [plaintiff] was armed"; and [3] plaintiff was only fleeing from a traffic stop, creating no reason to believe he was immediate threat to anyone's safety).

*4 (N.D.N.Y. Nov. 2, 2009) (McAvoy, J.) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 [2d Cir. 1994]).  "Factors that have been considered in determining whether a condition is serious include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'"  *Osacio*, 2009 WL 3698382, at *4 (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 [2d Cir. 1998]) (other citations omitted).  The "factors listed above, while not the only ones that might be considered, are without a doubt highly relevant to the inquiry into whether a given medical condition is a serious one."  *Chance*, 143 F.3d at 702.

As stated in Part III.A.1. of this Decision and Order, Plaintiff has introduced evidence that he suffered the following injuries as a result of his exchange with law enforcement officials on the night of September 2, 2006: (1) a headache and blurry vision; (2) swelling and bruising around his head; and (3) an abrasion to his right lower leg from the dog bite.  (Dkt. No. 40, Attach. 1, at 37-38; Dkt. No. 45, Attach. 2.)  In addition, Plaintiff has asserted (in a sworn but unsigned Second Amended Complaint, and a declaration that is improperly verified pursuant to 28 U.S.C. § 1746) that he (1) still suffers from "extreme headaches" and, as a result, receives "prescription medication to assist with the pain" (Dkt. No. 73, Attach. 2, at 11), and (2) still "suffers psychological problems," including nightmares, as a result of his exchange with law enforcement officials on the night of September 2, 2006 (Dkt. No. 54, at ¶¶ 14, 15; Dkt. No. 73, Attach. 2, at 11).

Based on the current record, and even accepting as true Plaintiff's factual assertions that he still suffers from "extreme headaches" and "psychological problems" (and, as a result, takes

"prescription medication to assist with the pain"), he has failed to introduce any admissible

evidence from which a rational factfinder could conclude that his injuries were sufficiently

serious to constitute a serious medical condition.[12]   Therefore, Plaintiff's claim of deliberate

indifference to his serious medical need is dismissed.

### 2. Whether Defendants Were Deliberately Indifferent to Plaintiff's Medical Needs

"The subjective prong of the deliberate indifference standard requires proof that the

accused defendant knew of and disregarded 'an excessive risk to inmate health or safety.'" *Ford*

---

[12]     *See Osacio*, 2009 WL 3698382, at *5 (finding that broken metacarpal does not constitute serious medical condition); *Porter v. Goord*, 04-CV-0485, 2009 WL 2180580, at *12 (W.D.N.Y. July 22, 2009) ("[A] small, dime-sized bump on the top of [plaintiff's] head, a quarter-inch laceration on his lower lip, and a one-inch laceration on the back of his neck" does not "constitute[] a serious medical condition for which the denial of adequate treatment could result in further significant injury or the unnecessary and wanton infliction of pain."); *Head-Bey v. Smith*, 04-CV-0191, 2007 WL 274793, at *6 (N.D.N.Y. Jan. 26, 2007) (Kahn, J. adopting Homer, M.J.) ("[A] 1 1/2 inch laceration on the left side of [plaintiff's] cheek with a small amount of bruising to his left wrist . . . [constitute] *de minimis* [injuries] and thus not sufficiently serious to constitute an Eighth Amendment violation."); *Hernandez v. Goord*, 02-CV-1704, 2006 WL 2109432, at *5-6 (S.D.N.Y. July 28, 2006) ("[A] foot problem" that was "undoubtedly painful" but "did not make [Plaintiff] completely dysfunctional" did not "r[i]se to the level of being life-threatening" and was therefore not a sufficiently serious medical condition.); *Qader v. New York*, 05-CV-0052, 2005 U.S. Dist. LEXIS 26958, at *8 (S.D.N.Y. Oct. 31, 2005) (finding that plaintiff's dizziness and "terrible headache" did not constitute a serious medical need); *Ruiz v. Homerighouse*, 01-CV-0266, 2003 WL 21382896, at *3 (W.D.N.Y. Feb.13, 2003) (dismissing deliberate indifference claim as matter of law because fractured metacarpal was not sufficiently serious medical condition); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 303, 311 (S.D.N.Y. 2001) (cut finger with "skin ripped off" is insufficiently serious to merit constitutional relief); *Evering v. Rielly*, 98-CV-6718, 2001 WL 1150318, at *9 (S.D.N.Y. Sept. 28, 2001) ("[S]oreness and redness to [plaintiff's] vaginal area, bruises, a knot on her back and a cut on her right forearm [from a knife]" constitute "superficial injuries that require time to heal[,]" not injuries that "satisfy the objective component of a deliberate indifference claim."); *Bonner v. New York City Police Dept.*, 99-CV-3207, 2000 WL 1171150, at *4 (S.D.N.Y. Aug. 17, 2000) (no serious medical need where plaintiff was unable to close one of his fingers and had discomfort due to allegedly inadequate treatment of his injured hand); *Dawes v. Coughlin*, 159 F.3d 1346 (2d Cir. 1998) (holding that a one-and-one-half inch laceration on inmate's elbow insufficient to demonstrate sufficiently serious injury under the Eighth Amendment).

*v. Phillips*, 05-CV-6646, 2007 WL 946703, at \*12 (S.D.N.Y. Mar. 27, 2007) (quoting *Hathaway*

*v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 [1995] ["The official

must both be aware of the facts from which the inference could be drawn that a substantial risk

of serious harm exists, and must also draw the inference."]).  "Specifically, the plaintiff must

prove that the accused defendant acted, or declined to act, with a state of mind equivalent to

criminal recklessness."  *Ford*, 2007 WL 946703, at \*12 (collecting cases).

Plaintiff has introduced evidence that he was arrested at 8:54 p.m. on September 2, 2006.

(Dkt. No. 73, at 34.)  In addition, according to Plaintiff, an ambulance was called to take him to

the emergency room at 12:45 a.m. on September 3, 2006.  (Dkt. No. 73, Attach. 1, at 4, ¶ 5.)[13]

Therefore, based on Plaintiff's own argument, it took Defendants less than four hours to respond

to his medical needs.  Furthermore, both Defendant Rell and Defendant Maisenhelder stated that

Plaintiff made no complaints to either of them that he required medical treatment at any time.

(Dkt. No. 45, Attach. 1, at 4-5, ¶ 5; Dkt. No. 45, Attach. 1, at 11-12, ¶ 3)

Under these circumstances (and in light of the fact that Plaintiff's medical condition was

not life-threatening, and that Defendants are not trained medical professionals, but rather, police

officers), the Court concludes that, even assuming that Plaintiff's injuries constitute a serious

medical need, Plaintiff has failed to introduce sufficient admissible evidence from which a

rational factfinder could conclude that Defendants Keller, Maisenhelder, Rell, Woltman, Hadsel,

Feeney, and John Doe Desk Officer were deliberately indifferent to Plaintiff's serious medical

needs.  *See Davidson v. Harris*, 960 F. Supp. 644, 648 (W.D.N.Y. 1997) ("As any lay person is

---

[13]     The emergency medical technicians' dispatch report indicates that Plaintiff was in
transport to the emergency room at 12:45 a.m.  (Dkt. No. 45, Attach. 2, at 5.)

well accustomed, patients are frequently faced with delays in receiving medical care, particularly when, [as in this case], their medical condition is not grave.").[14]

For these reasons, Plaintiff's deliberate indifference to serious medical needs claim is dismissed.

### C.    Claims Against Defendant Keller

Plaintiff claims that Defendant Keller, Chief of Police for the City of Kingston Police Department, is liable for Plaintiff's constitutional injuries based on his failure to "provid[e] adequate training to the officers of his department and lack of investigation into this matter." (Dkt. No. 54, at ¶ 17.)  As stated in Part I.C. of this Decision and Order, Defendants argue that Plaintiff's claims against Defendant Keller must be dismissed because Plaintiff has failed to demonstrate his personal involvement in the underlying constitutional violations.

"A plaintiff asserting a § 1983 claim against a supervisory official in his individual capacity must show that the supervisor was personally involved in the alleged constitutional

---

[14]    *See also Basnight v. Rossi*, 97-CV-1312, 2003 WL 722810, at *2 (E.D.N.Y. March 4, 2003) (granting summary judgment on claim of deliberate indifference where plaintiff received treatment, including six stitches, within four hours of arrest); *Universal Calvary Church v. City of New York*, 96-CV-4606, 2000 WL 1538019, at *9  (S.D.N.Y. Oct. 17, 2000) (granting summary judgment on plaintiff's deliberate indifference claim because he "received medical attention within one and one-half to two hours of his injuries[, and] [t]o the extent that he was visibly injured at the time of the arrest, his visible injuries were not so urgent as to require immediate attention, particularly considering there is no evidence that he requested treatment"); *Rivera v. State of New York*, 96-CV-7697, 1999 U.S. Dist. LEXIS 129, at *20 (S.D.N.Y. Jan. 12, 1999) (finding that hour-and-half delay between time plaintiff was shot and taken to hospital was not sufficient delay upon which to assert claim of denial of medical attention); *O'Kane v. Keane*, 94-CV-6869, 1997 WL 3271, at *6 (S.D.N.Y. Jan. 3, 1997) (finding that plaintiff, having been brought to hospital less than hour after incident, could not prevail on claim for deliberate indifference), *aff'd*, 159 F.3d 1347 (2d Cir. 1998); *Simmons v. Artuz*, 94-CV-6777, 1996 WL 233504, at *4 (S.D.N.Y. May 8, 1996) (finding that treatment to inmate by evening nurse from morning assault did not rise to level of deliberate indifference).

deprivation." *Houghton v. Cardone*, 295 F. Supp.2d 268, 276 (W.D.N.Y. 2003) (citing *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 [2d Cir. 2001]) (other citation omitted). The Second Circuit has repeatedly held that personal involvement can be demonstrated in one or more of the following manners:

> (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to others' rights by failing to act on information indicating that unconstitutional acts were occurring."

*Houghton*, 295 F. Supp.2d at 276 (citing *Colon v. Coughlin*, 58 F.3d 865, 873 [2d Cir. 1995]) (other citation omitted).

"A plaintiff cannot base liability solely on the defendant's supervisory capacity or the fact that he held the highest position of authority within the relevant governmental agency or department." *Id.* (internal quotation marks and citation omitted). Rather, a plaintiff must allege facts describing the defendant's personal involvement; a complaint that merely alleges a conclusion of personal involvement, with no supporting factual allegations, fails to satisfy the notice pleading standard of a civil rights complaint. *Id.*[15]

---

[15]    *See also Montero v. Travis*, 171 F.3d 757, 761-62 (2d Cir. 1999) (finding that claim against parole board chairman was properly dismissed as frivolous because plaintiff "never alleged any facts describing [chairman]'s personal involvement in the claimed constitutional violations"); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) ("While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."); *Pollack v. Nash*, 58 F. Supp.2d 294, 300 (S.D.N.Y. 1999) (allegation that defendant "'permitted the establishment of certain customs which encourage, allow or suffer the prosecution of child abuse cases without sufficient evidence' utterly fails to comport with the requirement that a civil rights complaint must contain 'more than mere conclusory allegations,' and fails to satisfy the requirement that the

In addition, at the summary judgment stage, in order to defeat a motion for summary judgment, a plaintiff must adduce at least some evidence in support of his claim.  *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A plaintiff seeking to defeat a motion for summary judgment, of course, must do more than make broad factual allegations and invoke the appropriate statute.  The plaintiff must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.").

Plaintiff's Second Amended Complaint alleges that Keller "is liable in this case and is liable for violations of [Plaintiff's] constitutional rights, [because] he [is] a city employee and in charge of the departmental affairs."  (Dkt. No. 54, at ¶ 17.)  The Complaint further alleges that Defendant Keller's "responsibility stems from not providing adequate training to the officers of his department and lack of investigation into this matter."  (Dkt. No. 54, at ¶ 17.)

Based on the limited and conclusory nature of the pleadings, the Court finds that Plaintiff's Second Amended Complaint fails to allege facts plausibly suggesting that Defendant Keller was personally involved.  *See Houghton*, 295 F. Supp.2d at 276-77 (dismissing plaintiff's complaint where plaintiff simply alleged that defendant "failed to adequately train or supervise the officers; (2) knew about and tolerated the officers' allegedly unlawful behavior; and (3) 'failed to institute a proper system of review and reprimand' of his deputies so as to prevent the types of unlawful acts alleged here"); *Pravda v. City of Albany*, 956 F. Supp. 174, 182 (N.D.N.Y.

---

defendant in a § 1983 action be personally involved in or actually caused a deprivation of a plaintiff's constitutional rights") (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 43 [2d Cir. 1988]); *Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."), *cert. denied*, 525 U.S. 1154 (1999).

1997) (Scullin, J.) (conclusory allegations that defendants were responsible for supervising the officers involved in alleged mistreatment of plaintiff, and that they were responsible for setting county policy, were insufficient to establish their personal involvement in alleged constitutional deprivations).  In addition, the Court finds that Plaintiff has failed to present any evidence that Defendant Keller adopted any policy in deprivation of Plaintiff's civil rights, or otherwise acted with gross negligence.

For these reasons, Plaintiff's claims against Defendant Keller are dismissed.

### D.      Claims Against Defendants Woltman, Hadsel and Feeney

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of Plaintiff's claims against Defendants Woltman, Hadsel and Feeney because the claims against these Defendants, which were asserted for the first time in Plaintiff's Second Amended Complaint (filed on July 22, 2008), are barred by the statute of limitations.

A party should be given leave to amend his complaint to add a new party when justice so requires.  *See, e.g., Blaskiewicz v. County of Suffolk*, 29 F. Supp. 134, 137 (E.D.N.Y. 1998).  "The party opposing such amendment has the burden of establishing that leave to amend would be prejudicial or futile."  *Blaskiewicz*, 29 F. Supp. at 137.   "A motion to amend the complaint may be considered futile if the claims or parties sought to be added are barred by the relevant statute of limitations."  *Id*. at 138.

The statutory limitations period for an action brought in federal court in New York arising under 42 U.S.C. § 1983 is three years.  *Singleton v. City of New York*, 632 F.2d 185, 189 (2d Cir. 1980), *cert. den*., 450 U.S. 920 (1981).[16]  A cause of action under Section 1983 accrues

---

[16]      The Court rejects Defendants' argument that the governing limitations period is one year and ninety days, under the circumstances.  *See Taylor v. Mayone*, 626 F.2d 247, 253 (2d Cir. 1980) (holding that "the appropriate statute of limitations for § 1983 actions against sheriffs

when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *Singleton*, 632 F.2d at 191 (citations omitted); *see also Krause v. Buffalo and Erie County Workforce Dev. Consortium, Inc., et al*, 425 F. Supp.2d 352, 365 (W.D.N.Y. 2006) ("[A] § 1983 action is subject to a three-year statute of limitations.  The three-year limitations period also applies to actions against municipalities for wrongful conduct, rather than New York General Municipal Law § 50-i[1].").  "In cases applying the *Singleton* rule, the date of arrest has been used as the accrual date for any subsequent action under section 1983."  *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997).

Plaintiff was arrested on September 2, 2006.  Therefore, Plaintiff's Section 1983 claim accrued on September 2, 2006, and the statute of limitations on such claim expired three years thereafter, on September 2, 2009.  Plaintiff's Second Amended Complaint was filed on July 22, 2008.  Because Plaintiff's Second Amended Complaint was filed within the limitations period, Defendants' statute of limitations defense regarding Plaintiff's claims against Defendants Woltman, Hadsel and Feeney is without merit.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 59) is **GRANTED** with regard to (1) Plaintiff's Eighth Amendment claim of deliberate indifference to his serious medical needs, and (2) Plaintiff's claims against Defendant Keller; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 59) is **DENIED** with regard to Plaintiff's Fourth Amendment excessive force claim against Defendants Hadsel, Woltman, Feeney and Rell; and it is further

---

and their deputies is the three-year provision of CPLR § 214(2) rather than the one-year provision of § 215(1)"; and pointing out, among other things, that "Courts [such as *Davis v. Krauss*, 478 F. Supp. 823 (E.D.N.Y. 1979), which] have stated that [§] 50-i, rather than CPLR [§] 214(2), applied to a [§] 1983 action have done so only when neither provision would bar the action").

**ORDERED** that the following claims are therefore **<u>DISMISSED</u>** from this action:

(1) Plaintiff's Eighth Amendment claim of deliberate indifference to his serious

medical needs,

(2) all of Plaintiff's claims against Defendants Maisenhelder, Keller, and John

Doe Desk Officer.[17]

Dated: March 25, 2010
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

---

[17]    As a result, J. Maisenhelder, Gerald Keller, and John Doe Desk Officer are
dismissed from this action as Defendants.